IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SAUL DIAZ,

    Plaintiff,

v.

NCB MANAGEMENT SERVICES, INC.,

    Defendant.

Case No.   1:19-cv-00559

## COMPLAINT

NOW COMES Plaintiff, SAUL DIAZ, through counsel, SULAIMAN LAW GROUP, LTD., complaining of Defendant, NCB MANAGEMENT SERVICES, INC., as follows:

## NATURE OF THE ACTION

1. This action seeks damages for Defendant's violation(s) of the Fair Credit Reporting Act ("FCRA"); 15 U.S.C. § 1681 *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

5. SAUL DIAZ ("Plaintiff") is a natural person, who at all times relevant resided in this judicial district.

6. Plaintiff is a "consumer" as defined by 15 U.S.C. §§ 1681a(b) and (c).

7. Plaintiff is a "person" as defined by 15 U.S.C. § 1681a(b).

8. NCB MANAGEMENT SERVICES, INC. ("Defendant") provides call center/business process outsourcing solutions in the United States. The company offers accounts receivable management solutions in the areas of bank cards, retail/business cards, consumer loans, installment loans, auto deficiency, commercial loans, direct mails, mortgage servicing, collection programs, and pre-charge off programs for financial markets; debt recovery services for education sectors; commercial collection programs to business-to-business clients (financial services, transportation, broadcast media, manufacturing, wholesalers, professional services, advertising, equipment rentals, distributors, entertainment, building materials, and information technology and software clients); subrogation recovery programs for insurance markets; personal and business taxes, parking fines, child support, court fees, and unemployment services to government sectors; and recovery intervention services, healthcare representatives, customized recovery strategies, scoring and segmentation modeling, complaint rates, client/patient liaisons, and secured data processing services for healthcare markets. It also provides customer acquisition, customer renewal, and lost customer regaining services; customer care and retention programs; help desk operations, troubleshooting, product warranty information, product recalls, and product support upgrading services; administrative outsourcing, data entry outsourcing, project management outsourcing, reporting and analytics, order processing, claim processing outsourcing, batch processing/skip tracing, and automated clearing house/credit card payment processing services; account management programs; and portfolio acquisition solutions of pre-charge off, performing accounts, fresh-charge off, secondary, and tertiary markets. The company was founded in 1994 and is based in Trevose, Pennsylvania.

9. Defendant is a "furnisher of information" as defined by 15 U.S.C. § 1681s-2.

**FACTUAL ALLEGATIONS**

10. On March 7, 2018, Defendant obtained detailed information about Plaintiff from TransUnion LLC.

11. Upon information and belief, Defendant misrepresented to TransUnion LLC that Plaintiff had a business relationship with Defendant.

12. Defendant received Plaintiff's consumer credit report without Plaintiff's knowledge or consent.

13. Defendant received sensitive personal information concerning Plaintiff under false pretenses.

14. Upon information and belief, it is Defendant's standard business practice to obtain consumer reports through false pretenses.

15. In August 2018, Defendant undertook a myriad of efforts to collect on behalf of Kabbage Inc.

16. On August 23, 2018, Defendant sent Plaintiff written correspondence seeking to collect $49,400.81 allegedly owed by DJS Construction, Inc.

17. Immediately thereafter, Plaintiff started to receive daily phone calls from Defendant.

18. Each time, Plaintiff talked to Shelly Stokes, an employee of Defendant.

19. Ms. Stokes used ethnic smears and threatening language in speaking to Defendant.

20. Specifically, Ms. Stokes called Plaintiff "spic" repeatedly.

21. Each time, Plaintiff politely disputed that this debt was not his.

22. On August 27, 2018, Plaintiff mailed dispute letters to Defendant by both Certified Mail® as well as First Class Mail®.

23. On August 30, 2018, Defendant received Plaintiff's dispute letters.

24. In response, Defendant informed Plaintiff that "they will look into this."

25. For the meantime, Ms. Stokes continued to place daily phone calls to Plaintiff.

## DAMAGES

26. Defendant's conduct results in Plaintiff's loss of credit standing, loss of creditworthiness, and invasion of privacy.

27. This entire experience has imposed anxiety, degradation, distrust, embarrassment, emotional pain and suffering, humiliation, and mental anguish on Plaintiff.

## CLAIMS FOR RELIEF

### Count I:
### Violation(s) of 15 U.S.C. § 1681 *et seq.*

28. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

29. The FCRA was enacted to promote the equitable use of consumer credit information and to ensure fairness and accuracy within the credit reporting system.

30. Section 1681b(f) provides that a consumer's credit report can only be pulled for a purpose authorized by the section itself, and any other inquiry is considered impermissible.

31. The FCRA defines a consumer report as "any written, oral, or other communication of any information … bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used" to determine that consumer's eligibility for credit or employment purposes. *Id*. § 1681a(d).

32. Section 1681b provides a list of other permissible purposes, such as "to review an account to determine whether the consumer continues to meet the terms of the account," or for

some other "legitimate business need … in connection with a business transaction." *See id.* § 1681b(a)(3)(A)-(G)

33. Defendant violated § 1681b(f) when it initiated a credit inquiry with TransUnion without some permissible reason to do so.

34. 15 U.S.C. § 1681n provides "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)

    (A)    any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000.

(2)    such amount of punitive damages as the court may allow; and

(3)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

35. 15 U.S.C. § 1681o provides "[a]ny person who is negligent in failing to comply with any requirement imposed under [the FCRA] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1)    any actual damages sustained by the consumer as a result of the failure; and

(2)    in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

36. Defendant's complete indifference as to its obligations under the FCRA reveal a conscious disregard for the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and wanton and willful conduct, calling for the imposition of punitive damages.

**WHEREFORE**, Plaintiff requests the following relief:

A.   find Defendant in violation of 15 U.S.C. § 1681b(f);

B.   award any actual damages to Plaintiff as a result of Defendant's violation;

C.   award any additional damages, as the Court may allow, in an amount not to exceed $1,000.00 for each such violation;

D.   award any punitive damages, as the Court may allow;

E.   award the costs of the action, together with any attorneys' fees incurred in connection with such action as the Court may determine to be reasonable under the circumstances; and

F.   award such other relief as this Court deems just and proper.

### Count II
### Invasion of Privacy by Intrusion Upon Seclusion

37.   All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

38.   Privacy is one of the sensitive and necessary human values and undeniably there are circumstances under which it should enjoy the protection of the law. *Leopold v. Levin*, 45 Ill. 2d 434 (1970).

39.   The four branches of privacy are: (1) intrusion upon the seclusion of another; (2) appropriation of name or likeness of another; (3) publicity given to private life; and (4) publicity placing person in false light. Restatement (Second) of Torts §§ 652B, at 378; 652C, at 380; 652D, at 383; and 652E, at 394 (1977); *see also* W. Prosser and W. Keeton, Torts § 117, at 849-69 (5th ed. 1984); M. Polelle and B. Ottley, Illinois Tort Law 177-213 (1985).

40. The tort of intrusion upon seclusion is described in the following manner: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B, at 378.

41. The examples provided as forming the basis for the tort of intrusion into the seclusion of another include the following acts: invading someone's home; an illegal search of someone's shopping bag in a store; eavesdropping by wiretapping; peering into the windows of a private home; and *persistent and unwanted phone calls*. W. Prosser and W. Keeton, Torts § 117, at 854-55.

42. Defendant's persistent and unwanted daily phone calls intruded upon Plaintiff's seclusion.

43. Defendant's persistent and unwanted daily phone calls would be highly offensive to a reasonable person.

**WHEREFORE**, Plaintiff requests the following relief:

A. find that Defendant intruded upon Plaintiff's seclusion;

B. award any actual damages to Plaintiff as a result of Defendant's intrusion;

C. award any punitive damages, as the Court may allow; and

D. award such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

January 28, 2019                                                                 Respectfully submitted,

/s/ *Joseph Scott Davidson*

Joseph Scott Davidson
Mohammed Omar Badwan
**SULAIMAN LAW GROUP, LTD.**
2500 South Highland Avenue
Suite 200
Lombard, Illinois 60148
+1 630-575-8181
jdavidson@sulaimanlaw.com
mbadwan@sulaimanlaw.com

*Counsel for Saul Diaz*